UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **GREGORY TOMPLAIT** | **CASE NO. 3:18-CV-01652 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **RICKY JONES, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), is a motion for summary judgment [doc. # 46] filed by remaining defendant, Pat Smith. The motion is opposed. For reasons detailed below, it is recommended that defendant's motion for summary judgment be GRANTED, and that plaintiff's remaining claims be DISMISSED without prejudice on the merits, but DISMISSED with prejudice for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915.

## Procedural History

On December 27, 2018, plaintiff Gregory Tomplait filed the instant pro se civil rights complaint under 42 U.S.C. § 1983 against Sheriff Ricky Jones and Warden Pat Smith for events that occurred while he was housed at the Tensas Parish Detention Center ("TPDC"). Specifically, plaintiff alleged that on June 22, 2018, he was exposed to airborne pesticide at the TPDC, and that, subsequently, defendants exhibited a "total lack of attention to [his] required medical care . . ." [doc. # 1, p. 4]. The aircraft that released the pesticide flew twenty-five feet above plaintiff's head, spraying a white substance for forty-five minutes. [doc. # 20, pp. 3-4]. As a result of the pesticide exposure, plaintiff suffered a "real bad" cough, burning eyes, severe headaches, blurred vision, and sinusitis. [doc. #s 1, pp. 4-5; 20, p. 5]. Tomplait submitted seven

requests for medical care, but he received no response. [doc. # 20, pp. 6-7]. On June 29, 2018, plaintiff filed a grievance, directed to Warden Pat Smith, but received no response. *Id*. at 6.

After filing his eighth request for care on August 9, 2018, a nurse checked plaintiff's blood pressure and informed him that he "would be placed on a list to see a doctor." *Id*. On August 25, 2018, before a physician could evaluate him, plaintiff submitted a second grievance directed to the Louisiana Department of Public Safety and Corrections. *Id*. Again, he received no response. *Id*.

On February 22, 2019, plaintiff was transferred to the Madison Parish Correctional Center ("MPCC"). [doc. # 15]. On March 10, 2019, a physician at the MPCC diagnosed him with "really high" blood pressure. [doc. # 20, p. 7]. Plaintiff claims that he never had blood pressure problems before, and he suggests that, because of the delay in treatment, his eyesight "is bad and getting worse," he cannot focus on objects near or far, and he endures severe headaches, chest pains, and a persistent cough. *Id*. at 7-8.

In April 2019, a nurse practitioner prescribed medication for plaintiff's blood pressure, but plaintiff maintains that the new medication is ineffective. [doc. # 22, p. 1]. Tomplait seeks $250,000.00 in punitive damages, $500,000.00 for the costs of future medical care, and "immediate medical attention at a D.O.C. facility," including a "comprehensive examination to determine what medical issues" he may experience in the future. [ doc. # 1, p. 5].

On July 3, 2020, the undersigned completed initial screening pursuant to 28 U.S.C. §§ 1915 and 1915A and recommended dismissal of plaintiff's claims against Sheriff Ricky Jones, including his ostensible conditions-of-confinement claim. (July 3, 2019, R&R [doc. # 24]).[1]

---

[1] The District Court adopted the report and recommendation on July 29, 2019. (Judgment [doc.

2

However, the court also ordered remaining defendant, Warden Pat Smith, served with plaintiff's claims for pesticide exposure and denial of medical care. (July 3, 2019, Mem. Order [doc. # 23]. Smith filed her answer to the complaint, as amended, on February 14, 2020. (Answer [doc. # 44]).

Following a period for discovery, defendant, Pat Smith, filed the instant motion for summary judgment seeking dismissal of plaintiff's remaining claims for failure to exhaust available administrative remedies prior to filing suit. [doc. # 46]. Plaintiff's opposition brief was received by the Clerk of Court on July 20, 2020, but not docketed in the record until July 21, 2020. [doc. # 50]. Defendant filed her reply brief on July 28, 2020. [doc. # 51]. Thus, the matter is ripe.

## Analysis

**I.      Summary Judgment Principles**

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

---

# 29]).

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support his claim, summary judgment is appropriate. *Id.* "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007) (citation omitted).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in his favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

When a movant bears the burden of proof on an issue, she must establish "beyond

4

peradventure[2] all of the essential elements of the claim . . . to warrant judgment in h[er] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish her right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

**II.     Administrative Exhaustion**

    a)     <u>Law</u>

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and is required even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th Cir. 2009) (citing *Woodford, supra*). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id*.

Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). If the court considers evidence beyond the pleadings to resolve the exhaustion

---

[2] I.e., beyond doubt.

5

issue, then the nonmoving party is entitled to the protections of Rule 56. *Id*.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter, supra* (citation omitted). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). In addition, exhaustion applies to claims brought against defendants in their official and/or individual capacities. *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5th Cir. 2003).

**A prisoner is required to exhaust all steps of a grievance process even if the prison fails to respond to his grievances at an earlier step in the process**. *Wilson v. Epps*, 776 F.3d 296, 302 (5th Cir.2015) (plaintiff failed to proceed through all three steps of the grievance process; instead, he completed only the first step, and then filed suit when those grievances were not responded to in a timely fashion); *Hicks v. Lingle*, 370 F. Appx. 497, 499 (5th Cir. 2010); *Ates v. St. Tammany Parish*, Civ. No. 13-5732, 2014 WL 1457777 (E.D. La. Apr. 15, 2014). Moreover, to the extent that language on the form or policy regarding subsequent step review is phrased in discretionary rather than mandatory terms, the prisoner still must exhaust all "available" steps. *Ates, supra* (and cases cited therein); *see also Hicks, supra* (inmate required to proceed to second step even though procedure said only that inmate "may appeal" if dissatisfied with first step response); *Wilson, supra* (subsequent steps of grievance process remained unexhausted even though phrased permissively as "may request," and "may appeal"). In short, the courts "will not read futility or other exceptions into statutory exhaustion requirements where

6

Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825, n.6 (2001).

In 2016, the Supreme Court explained that "[u]nder § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1858 (2016). The Court then looked to dictionary definitions of "available," to conclude that an inmate is "required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. (citations omitted).[3]

The Court recognized three circumstances where an inmate's duty to exhaust administrative remedies may be excused, or in statutory parlance, deemed unavailable. *Id*. First, an administrative procedure is unavailable where officers consistently are unable or unwilling to provide relief to aggrieved inmates. *Id*. (citation omitted).[4] Second, exhaustion is not required where an administrative scheme is so opaque that it is unknowable in the sense that no ordinary

---

[3] Whether administrative remedies are "available" is a question of law, but the resolution of that question may turn on questions of fact. *Leggett v. Lafayette*, 608 Fed. Appx. 187, 190 (5th Cir.2015).

[4] The Supreme Court provided some examples,
> [s]uppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office─but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In *Booth*'s words: "[S]ome redress for a wrong is presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: "[T]he modifier 'available' requires the possibility of some relief." When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.

*Ross, supra* (internal citations omitted).

7

prisoner can discern its requirements. *Id*. Finally, the administrative process is rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*.[5]

The Fifth Circuit consistently has held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. *Aguirre v. Dyer*, 233 Fed. Appx. 365 (5th Cir. 2007) (citation omitted); *Simkins v. Bridges*, 350 Fed. Appx. 952, 953-954 (5th Cir. 2009) (citation omitted); *Plaisance v. Cain*, 374 Fed. Appx. 560, 561 (5th Cir. 2010) (citation omitted). Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances." *Dillon, supra* (citations omitted). When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable. *Id*. "If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir.2008)).

      b)      <u>The TPDC had an Available Administrative Remedy Procedure</u>

In support of her motion for summary judgment, Warden Pat Smith submitted a declaration wherein she averred that

1.     The TPDC has a two-step administrative remedy procedure (hereinafter, "ARP") that is explained to all inmates and is also written on the TPDC grievance forms available to all inmates.

---

[5] "Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir.2015). Moreover, remedies are not available where institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies. *Aceves v. Swanson*, 75 Fed. Appx. 295, 296 (5th Cir.2003).

8

2.  Step one of the ARP is to file a written grievance to the warden's office within 30 days of the date of the incident made the subject of the grievance.

3.  The facility will respond to a step-one grievance within 15 days.

4.  An inmate who is not satisfied with the step-one response may file a second-step request for review by the warden within 5 days of receipt of the step-one response.

5.  If, for any reason, an inmate does not receive a step-one response within 20 days of submission of the grievance, the inmate is specifically authorized to proceed to the step-two request for review by warden within 5 days thereafter.

(Pat Smith Decl. and Grievance Form.; MSJ, Exhs. A and A1).

Here, plaintiff was aware of the TPDC's grievance policy because it is set forth on the grievance form that he purportedly used at step-one of the grievance process. *See* doc. # 20-1, pg. 6, doc. # 50-2, pg. 1.

    c)    <u>Plaintiff Failed to Exhaust Available Administrative Remedies Prior to Filing Suit</u>

In support of her motion for summary judgment, defendant adduced competent summary judgment evidence to show that the TPDC never received the step-one grievance form that plaintiff purportedly submitted. (Smith Decl.). In addition, plaintiff failed to file a step-two request for warden's review of any grievance at the facility. *Id*.

In response to defendant's motion, plaintiff submitted a declaration whereby he averred that, within five days of his exposure to the pesticide, he submitted an offender grievance on the proper form to the TPDC. (Decl. of Gregory Tomplait; Opp. Memo., Exh. [doc. # 50-1]). Tomplait added that, "[a]fter waiting twenty days following submission of the first Offender Grievance form and receiving no response, [he] submitted a second Offender Grievance which was identical to the first and addressed it through the mail system at TPDC to Warden Pat Smith for a step two response." *Id*. Tomplait explained that the TPDC does not provide its offenders

9

with receipts to prove timely submission of grievances. *Id*. He further deduced that Warden Pat Smith deliberately refused to retain a copy of either of his grievances that form the basis for this suit. *Id*. Plaintiff added that, in contrast to his grievances, the TPDC inexplicably managed to receive and handle his numerous other letters and request forms that were sent through the same system. *Id*.

Tomplait further averred that after he failed to receive any response to the *two* offender grievances that he submitted to the TPDC, he proceeded to submit a *third* offender grievance directly to the Louisiana Department of Public Safety and Corrections ("LDPSC"). *Id*.

For purposes of the instant summary judgment motion, the court has no difficulty with crediting plaintiff's declaration that he timely submitted a step-one grievance under the TPDC's grievance policy – a contention that he has consistently made throughout this case. Where the court is constrained to part ways with plaintiff is with his recent realization and representation that, rather than sending his step-two grievance to the LDPSC, he actually sent his step-two grievance to the TPDC warden and *then* sent a *third* grievance to the LDPSC.

At the summary judgment stage, the court ordinarily would be required to credit plaintiff's declaration made under penalty of perjury, which would suffice to create a genuine dispute of material fact as to whether he complied with step-two of the TPDC's grievance procedure. In this case, however, plaintiff previously averred in his amended complaint, *also* under the penalty of perjury, that he "filed a grievance to the warden," and "t**hen 2nd step ARP to DOC**, see attached." [doc. # 20] (emphasis added). The attachment is a handwritten letter addressed to the Louisiana Department of Public Safety and Corrections, dated August 25, 2018, and requesting an administrative remedy. [doc. # 20-1, pgs. 7-8].

10

Plaintiff's prior representation cannot be characterized as an inadvertent error or oversight. This is so because he attached to his amended complaint a detailed, and seemingly exhaustive, summary of grievances and sick calls that he submitted regarding the events at the TPDC, but which mentioned only two grievances: a grievance to the warden on June 29, 2018, and an "ARP to the "DOC" on August 25, 2018. [doc. # 20, pgs. 5-8]. Only now – in response to defendant's motion for summary judgment that emphasized that step two of the TDPC's grievance policy required an offender to submit a request for warden review – did plaintiff recall that he transmitted a second grievance to the warden.

The Fifth Circuit, however, has recognized that "[a]lthough the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists. Thus, the nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir.1984) (internal citation omitted). In this case, plaintiff did not attempt to reconcile his current declaration with his prior, inconsistent statement or otherwise proffer an explanation for his recent epiphany. Accordingly, the court cannot credit plaintiff's declaration that he submitted a step-two request for warden review.

Plaintiff advanced three arguments as to why defendant cannot rely on the absence of evidence of exhaustion of remedies to support summary judgment: 1) Pat Smith has a policy of ignoring and failing to maintain prisoner grievance forms; 2) by stating that plaintiff never filed a step-two request for warden's review, Pat Smith implicitly agreed that plaintiff submitted a timely step-one grievance; and 3) defendant failed to explain how she received all of plaintiff's

11

other in-house mail, but not his grievances.  Plaintiff's arguments, however, largely miss the mark.  Until his recent declaration (which the court does not credit), plaintiff, himself, never purported to send a step-two request for warden's review to defendant.  Indeed, plaintiff previously admitted, under penalty of perjury, that he submitted his 2nd Step ARP to the "DOC," not to the warden.  Furthermore, Pat Smith undoubtedly stated that plaintiff never filed a step-two request for warden's review in the likely event that, for purposes of the summary judgment motion, the court was obliged to credit plaintiff's representation that he submitted a step-one grievance.[6]  Smith's circumspection and prudence were validated.

In sum, on the existing record, the undersigned is compelled to find that no reasonable trier of fact could find that plaintiff fully and properly exhausted the TPDC grievance procedure for his claims that defendant exposed him to pesticides and failed to provide him with subsequent medical care.  *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 411 (5th Cir. 2008) (no reasonable trier of fact could find for the nonmoving party).  "When deciding a motion for summary judgment prior to a bench trial, the district court has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result."  *Jones v. United States*, 936 F.3d 318, 321 (5th Cir.2019) (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010)).  In this non-jury,[7] pro se prisoner complaint, the undersigned

---

[6] Insofar as plaintiff argued that the grievance procedure was unavailable because Smith consistently ignored grievances, he failed to set forth evidence to support a finding that the TPDC *never* accorded relief.

[7] Plaintiff repeatedly stated in his brief that this matter should be permitted to go to the jury.  In this case, however, neither side made a jury demand.

12

magistrate judge ordinarily is the trier of fact at a hearing held pursuant to *Flowers v. Phelps*, 956 F.2d 488 (5th Cir.), modified on other grounds, 964 F.2d 400 (5th Cir.1992), which "amounts to a bench trial replete with credibility determinations and findings of fact." *McAfee v. Martin*, 63 F.3d 436, 437 (5th Cir.1995).

    d)    <u>Remedy for Failure to Exhaust</u>

The plain language of the PLRA precludes any further action on plaintiff's claims until he has fully exhausted the administrative remedy procedure.[8] Dismissal is the remedy, and although it is typically without prejudice,[9] the court is authorized to dismiss plaintiff's complaint with prejudice to his right to re-file it, in forma pauperis ("IFP"):

> [b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [plaintiff] sought relief to which he was not entitled-that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing [plaintiff]'s action with prejudice for purposes of proceeding IFP.

*Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 920-21 (2007)).

The foregoing approach is appropriate here. Accordingly, if plaintiff exhausts his administrative remedies with respect to the claims raised herein, he may present these § 1983 claims again, but may not proceed in forma pauperis to do so.[10]

---

[8] *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir.1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 214, 127 S. Ct. 910, 920 (2007) (§ 1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a § 1983 suit, rather than while the action is pending . . . [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.").

[9] *See e.g., Plaisance v. Cain, supra*; *Cooper v. Quarterman*, 342 Fed. Appx. 12, 13 (5th Cir. 2009).

[10] Of course, administrative exhaustion requires "proper" exhaustion, i.e., compliance with an

13

**Conclusion**

For the above-stated reasons,

IT IS RECOMMENDED that the motion for summary judgment [doc. # 46] filed by the lone, remaining defendant, Pat Smith, be GRANTED, and that plaintiff's remaining claims against said defendant be DISMISSED, without prejudice on the merits, but DISMISSED with prejudice for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 4th day of August 2020.

                                                KAREN L. HAYES
                                                UNITED STATES MAGISTRATE JUDGE

---

agency's deadlines and other critical procedural rules.  *Woodford, supra*.  At this point, plaintiff's delay effectively may foreclose his ability to properly exhaust available administrative remedies.